We'll hear the next case, George Ongley v. St. Lukes Roosevelt Hospital. Just hold on while we wait for the crowd to leave. Ongley v. St. Lukes Roosevelt Hospital George Should it have been known to the medical providers? If this was an appropriate history was asked. Dr. McElary acknowledged when he was questioned during his deposition that based off of what Dr. Lewis said she asked, based off of her pre-anesthesia evaluation, which uncovered a laundry list of medical history, including when it came to musculoskeletal issues, arthritis. Is there a factual question as to whether he was asked about shoulder injuries? No, not on this record. When taking the record as a whole, Dr. Lewis first, the medical records, not just Dr. Lewis, and I'm sorry, appellant was referring to Dr. Lewis as Dr. Chen. She was Dr. Lewis at the time of the surgery and Dr. Chen now, so it's one and the same. But even before he was admitted to the hospital, both to his cardiologist during the cardiology clearing and the primary care physician, there's no mention of shoulder pain, instability, or rotator cuff injury. I understand there's no mention. Why is there no mention? Was he asked the question? Is there evidence to show that he was asked the question and he did not volunteer the prior shoulder issue? Yes, both the testimony and the affidavit of Dr. Lewis and the medical records where they go through this laundry list. And as Judge Corman had mentioned before, when they ask about musculoskeletal issues and Dr. Lewis also averted that she asked specifically if there's any issues with movement, painful or restricted movement, numbness, tingling, or weakness, or injuries suffered in the past. As Judge Corman mentioned, that's supposed to cover everything so that the patient can give them the history. If we were to hold, as appellant is asking, they would have to go through every single part of a patient's body to ask specifically. Not necessarily. It would seem to me that the doctor should know that during this kind of a procedure, they're going to prop the person open and that that could have an impact on the shoulder and that, therefore, they should ask about shoulder injuries. I mean, it is indeed generally known that if you have this surgery prior history, you can't go above 45 degrees. It would seem to me that a reasonable physician would ask the question specifically about the shoulder, and not go through every part of the body, but the shoulder. That's true, and Dr. Lewis said that that would have been included in part of her questioning, and Dr. Bamberger, who was the attending anesthesiologist, testified at 1244 that when the patient is on the table, he asks if that positioning is okay. So these are other things that they ask, but even putting that aside for another minute was that this is all presuming that the patient suffered a brachial plexus nerve injury as a result of the surgery, which the objective evidence doesn't support that. There's no objective evidence until I believe it's June or July that there was any brachial plexus injury. And then it's from... Are three experts saying opining to that effect? Eventually, that there's an injury. And that's what we're saying, that there's a time... ..the injury resulted from the surgery or the post-surgery transfer. Or that it could have resulted from none of those, and that's critical in this case because by the time the plaintiff returned to his doctor 2 weeks after the surgery, he'd already been driving against medical advice. His daughter testified that he would lift heavy objects against medical advice, and due to no fault of his own, he was also heavily involved in the care of his wife, which involved other movements that could have affected his prior rotator cuff tear. And the reality is that it's just on the record as a whole in this case. There's no medical record support for plaintiff's multiple theories of departure. The appropriate history was taken. It revealed a laundry list of conditions. The positioning was done properly based off of the history that was revealed, and Dr McIllary conceded that had the plaintiff just not... ..which is what appears to be from the records, had not responded that he had this prior rotator cuff tear, then the positioning was proper. And further from that, Dr McIllary's theory that the positioning could have caused this also relies upon there being a hypoperfusion and traction event to cause the ischemia during the operation. And he acknowledged on multiple occasions that there's no evidence of hypoperfusion in this case. So, essentially, what this all derives from is that, as we mentioned on page 30 of our brief, and at page 1495, Dr McIllary testifies about how, based off of the fact that the plaintiff eventually, at some point, has this brachial plexus nerve injury, he looked back and then tried to winnow out or excise select portions of the record to craft theories, which, as a matter of law, is insufficient under New York medical malpractice jurisprudence. Did Mr Ong Lee testify that he was never asked about his prior rotator cuff injury? He did testify that. And that's some evidence from which a jury could find that he was never asked about his prior rotator cuff injury? In isolation, but when we review the record as a whole... I know what you mean by in isolation. Could a reasonable jury find from that testimony that he was not asked about his prior rotator cuff injury? They could find that he wasn't asked that specific question, but as we've been discussing, that's just getting so specific... And did Dr Lewis Chen testify that she had never been taught anything about improper positioning of the arms during surgical procedure? She talked about brachial plexus injury that she attributed... She testified, I'm reading from the blue brief at page 30, in general, nothing that I have been taught has anything to do with positioning. And so a reasonable jury could conclude from that testimony that she didn't think it was an issue, and therefore, particularly given Ong Lee's testimony, that she never asked a question. They could, but then even Dr... And if they could, then isn't that a factual question for trial? Not under these circumstances, because Dr MacLary then also goes on to say on page 32 of that brief, and it's 1411 of his testimony, that he can't connect the dots between her understanding and his alleged departure and causation theory because Dr Bamberg, or it was the attending anesthesiologist. But that still goes into, as the district court said, if her training... If there was some lapse in her training, then that would have to lead to inadequate questioning, which would then have to lead to inadequate questioning, which then, in combination with hypoperfusion and traction, could have caused this injury, or maybe not, because maybe it was during the transfer, which Dr MacLary acknowledged, based on the testimony of Dr Lewis, that there was four people involved. In addition to a sliding device, Dr MacLary acknowledged that was within the standard of care. Does it matter whether it was the positioning or the transfer, in terms of the hospital's liability? Yes, because we don't have objective evidence of an injury until months after discharge. But if we know that it's one or the other, if a reasonable jury could find that it was one or the other under the Babbage case, isn't that enough to put it to the jury? No, not under these facts, because not only did Dr MacLary say it could be one or the other, he also said, or it could be none of these. And the facts here, based off of the objective medical record, where there's no evidence of a brachial plexus nerve injury until months later. The cases in Babbage and the other race ipsa cases, it's immediately after surgery, and it's in a location, something that's not... For example, the burn injuries. That doesn't happen absent negligence. In this case, MacLary even acknowledged that it could happen in the absence of negligence, and that's why this case falls out of race ipsa, in addition to all of the other theories being belied by the record facts. What was Judge Caproni's decision? It was not based on whether or not he was asked and what he was told. She... If I read her opinion correctly, she passed over that. She... The discussion was mostly about the causation theory. Right. And that was another aspect that we're saying, where the positioning, it depends on there being hypoperfusion and traction, of which there's no evidence that that occurred, and all this had to occur at the same time as the positioning for there to be an ischemic event to cause this injury. So that's why it's multifold, and despite all the theories, the record, when viewed as a whole, just does not support any of these theories that a reasonable jury could find in favor of the appellant. What did the expert... The significance of the expert's testimony, I think it's quoted in Judge Caproni's opinion, that it would not be unreasonable to begin an analysis of this on the fact that none of these things caused the injury. You're discussing where he said, I think that if you look at it with the null hypothesis mindset, that it's a perfectly reasonable way to go into the... Well, the reason why that's significant is because, actually, he's supposed to start with reviewing the propriety of the medical provider's care at the time that they were treating the plaintiff, not with the after-acquired knowledge that, at some later date, he developed a brachial plexus nerve injury. So that's why that's very significant, and why that question was posed to the doctor during the deposition was because it was evident that his theories were all based from this after-acquired knowledge, rather than assessing the records as if he was contemporaneously treating the plaintiff. And the after-acquired knowledge was his testimony that he started off and he made a list of all the things that could have possibly caused the injury after the fact. Is that what you're talking about? Correct. But even with that legally deficient starting point, when you look at the record as a whole, the record on this case is just not sufficient for a reasonable jury to find in favor of the appellant. Thank you. Thank you. We'll hear the rebuttal. We have the testimony from Dr. Louis Chen, who says that she asked, and we have the contradicting testimony of Mr. Ongle, who says that he wasn't asked. That's a question of fact. We have the testimony of the defendant's expert, and we have the testimony of my three experts that say that this was caused by the medical negligence during the AAA, the abdominal aortic aneurysm surgery. The jury could answer that, determine that, and should determine that question of fact. Here we have a patient who goes into the quintessential black box, and in the black box, one or both of only two things could have happened. Either he suffered an injury to his shoulder because of positioning during the transport, or he suffered an injury to his shoulder because of improper positioning. And we know that because Dr. McIllary is an expert in the black box. That says that your expert says, or it could be neither one of those. Is that true? Dr. McIllary, during his seven-plus-hour deposition, was asked a variety of hypothetical questions, and during that time he said that it's possible that it was neither. But he clarified those answers to say that it is the only two, one and or the other, during the transfer or the positioning that are reasonable, medically probable. And that given the weight of all of the evidence, it's more likely one or the other. And that was the basis of his testimony. And his questioning, he was talking about winnowing. And what he said was, and how I read his testimony, and how the jury is going to, I think, understand the testimony, is he sat down with his understanding of how the operation happens, how the procedure is done, how the transfers are done, how the positioning happens, and given the medical history of this patient. And he went through to try and figure out what happened, what caused the injury. And he went step-by-step through it and ruled out the things that were unlikely, improbable, medically impossible, and came to the only two rational, reasonably medical probable conclusions, that it was either the transfer and or the positioning that caused his injury. Thank you. Thank you. Reserved decision.